422 A.2d 649

**PLEASURE HARBOR MARINA, INC., a
Pennsylvania Corporation**

v.

**Arthur J. BOYLE, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued April 14, 1980.

Filed Nov. 7, 1980.

10

David G. Petonic, Greensburg, for appellant.

James Hook, Waynesburg, for appellee.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

VAN der VOORT, Judge:

The issue before us is the ownership of a 20–year lease, with purchase option on a 66–acre tract of land in Greene County located on Ten–Mile Creek near its confluence with the Monongahela River. The lease and option agreement was entered into on October 30, 1972, between Harry D. Ford and Paul Gaskill, et ux., (hereinafter, Ford and Gaskill) as lessors, and Paradise Haven, Inc., (hereinafter, Paradise Haven) as lessee. Paradise Haven was incorporated in 1972 with Thomas Gazica, (hereinafter, Gazica) and William C. Housley, (hereinafter, Housley) as owners and operators of the company.

From 1972 to 1975, Paradise Haven operated a marina on the leased property but with poor financial results. Housley was forced out of the management in 1975. No rent was paid on the lease during these years and other debts were incurred.

On March 5, 1976, Housley filed a Petition in the lower Court to have Gazica removed as manager of Paradise Haven and a Custodian appointed pursuant to 15 P.S.

1383(A). Gazica filed an Answer denying all allegations of mismanagement. On August 13, 1976, at the conclusion of a hearing on the issue, the Court ordered the appointment of three custodians. On October 1, 1976, the custodians moved to have Paradise Haven declared insolvent. On October 12, 1976, the Court appointed John Stets as Receiver and ordered him to sell all the assets of Paradise Haven and wind up its business affairs. The Receiver took sealed bids for the sale of all assets as a package and Pleasure Harbor Marina, Inc., (hereinafter, Pleasure Harbor) with Housley as its agent, made the high bid, $77,500. The sale to Pleasure Harbor was confirmed by the Court on April 27, 1977. Pleasure Harbor's claim to the 20–year lease and purchase option is based on this purchase of assets.

Arthur J. Boyle, Jr., (hereinafter, Boyle), appellant herein, claims title through a purchase of the land from Ford and Gaskill on January 14, 1978 and a purported assignment to him by Paradise Haven on the same date of its interest in the leasehold. This assignment was made by Gazica in the name of Paradise Haven. This was subsequent to his removal by the Court and to the Receiver's sale of all of the assets of Paradise Haven. On January 24, 1978, Boyle's lawyer wrote a letter to Pleasure Harbor giving it a 30–day notice to vacate the premises, apparently on the assumption that Pleasure Harbor was either a trespasser or a tenant at will. No default was asserted in the notice. On March 1, 1978, Boyle started an eviction proceeding against Pleasure Harbor before a District Magistrate. On March 21, 1978, Pleasure Harbor petitioned the lower Court for a Declaratory Judgment to determine the ownership and status of its leasehold. On the same date, it obtained an Order from the Court staying the proceeding before the District Magistrate so that all matters could be considered simultaneously by the lower Court.

After protracted hearings, the lower Court entered an Order on March 23, 1979, to the effect that Pleasure Harbor owned and possessed the leasehold interest, originally held by Paradise Harbor, for the balance of its term and that

Boyle's eviction action should be dismissed. On August 6, 1979, the Court dismissed Exceptions to its Order and this appeal resulted.

The appellant, Boyle, challenges the legality of the sale of the leasehold to Pleasure Harbor by the Receiver on three grounds: (1) he questions the jurisdiction of the Court; (2) he contends that the bulk sale of the assets of Paradise Haven did not include the leasehold because it was not separately identified; (3) he argues that if a sale of the leasehold was intended by the Receiver, it was not legally effective because it was not accomplished by an assignment in writing as required by the Statutes of Frauds.

The challenge to the jurisdiction of the Court to appoint a Receiver and order a sale of the assets of Paradise Haven is based upon the fact that the registered office of Paradise Haven was in Allegheny County while the action was brought in Greene County. The Business Corporation Law of 1933, as amended, 15 P.S. 1383(A), places the venue of such an act in "The Court of Common Pleas of the county in which the registered office of the corporation is located". All of the property of Paradise Haven, its operations and its officers were located in Greene County and no objection was taken by anyone during the insolvency proceedings and the ultimate sale of the assets of Paradise Haven to venue in the Court of Common Pleas of Greene County. Paradise Haven and its creditors were present in Court and represented by counsel at every stage of the proceeding. While any of them might have sought a change of venue to Allegheny County, none did so.

■ Boyle's status to challenge the validity of the receivership is based upon his purchase of the land underlying the leasehold and upon a claimed assignment of the leasehold interest of Paradise Haven, both approximately a year after the insolvency proceeding had been concluded by the Receiver's sale. He bought into this litigation with full knowledge of what had transpired prior to his purchase. His right to challenge the venue of the action can rise no higher than that of Paradise Haven from whom he took a purported assignment of the lease.

Venue and jurisdiction are not synonymous. Venue is a matter of procedure rather than substance and may be waived: *Hohlstein v. Hohlstein*, 223 Pa.Super. 348, 350, 296 A.2d 886, 888 (1972). Jurisdiction is vested in the Court of Common Pleas of any county in which a defendant or principal defendant can be served or in which the property or a part of the property which is subject to the action is located: Pa.R.C.P. 1503. The Court of Common Pleas of Greene County met each of these qualifications. We conclude that the lower Court had jurisdiction to conduct the hearings, appoint a Receiver and order a sale of the assets, and that any objection to the venue of the Court was waived.

We next address the question of whether the leasehold was included in the property sold to Pleasure Harbor. The Order of the lower Court to the Receiver was in the following terms:

"By this Order, the Receiver is ordered to secure the keys for Paradise Haven, Inc., a marina situate in Jefferson Township, Greene County, Pennsylvania and to take complete charge of the premises and do whatever is required of him to wind up the business affairs of Paradise Haven, Inc., including the sale of all assets and inventory, parts, supplies and any other assets that he finds to belong to the said Paradise Haven, Inc."

The Receiver took sealed bids for the sale of all assets of Paradise Haven and Pleasure Harbor was the high bidder.

It is argued that the Receiver had not affirmed his election to assume the lease and hence may have intended to disavow it prior to the sale. The facts demonstrate the contrary. He remained in possession of the leasehold property as Receiver from October 12, 1976 until April of 1977 when the sale of "the assets" of Paradise Harbor was approved by the Court. In his accounting to the Court, the Receiver recommended payment to the landlords, Ford and Gaskill, not only of rent due for the period prior to the receivership but of rental for the receivership months and this was approved by the Court. By such actions, the

Receiver affirmed the lease as an asset of the estate as convincingly as though he had filed a written acceptance of it: *Sloan & Zook Co. v. Lyons Refining Co.*, 290 Pa. 442, 445–6, 139 A. 133 (1927).

 Being an asset of the estate, it was plainly included in the sale of "all assets" of Paradise Haven. The other assets of the marina would have been substantially worthless without retention of the leasehold. We conclude that the Receiver and the lower Court intended that the sale include the leasehold as well as the buildings and fixtures affixed to it.

 The appellant's next contention is that if the leasehold was included in the sale, it was invalidly assigned because it was not evidenced by an assignment in writing. While it is true that a lease for a term of more than three years, or an assignment of such a lease, must usually be in writing, 68 P.S. § 250.202, there is an exception to this requirement if the assignment is one "which results from operation of law": 68 P.S. § 250.203. A Receiver's sale is plainly one which results by operation of law: *Simons v. Van Ingen*, 86 Pa. 330, 332, (1878); *City of New Castle v. Whaley Heirs*, 102 Pa.Super. 492, 499, 157 A. 503 (1931). We conclude that the leasehold was validly conveyed by operation of law at the Receiver's sale.

Having concluded that a legally sufficient assignment of the leasehold was acquired by Pleasure Harbor at the Receiver's sale, we next consider the validity of appellant Boyle's eviction action. Boyle had purchased the underlying property from Ford and Gaskill on January 14, 1978 and on the same day he obtained from Gazica, purporting to represent Paradise Haven, an assignment of the leasehold on the assumption that it had not been sold to Pleasure Harbor at the Receiver's sale. Boyle then started an eviction proceeding against Pleasure Harbor by a 30–day notice to vacate dated January 26, 1978. The notice averred no default on the part of Pleasure Harbor, but was based on the assumption that Pleasure Harbor had not acquired a valid title to the leasehold and was, at most, a tenant at will. That premise was legally faulty because the Receiver's sale

had vested title to the remaining term of the 20–year lease in Pleasure Harbor.

In Boyle's eviction action of March 1, 1978 and in his Answer of April 28, 1978 to Pleasure Harbor's petition for a Declaratory Judgment, he contended that he was entitled to an eviction order because Pleasure Harbor had not paid the leasehold rental for the fourth quarter of 1977 until January 31, 1978, one day beyond the 30–day grace period allowed by the lease and because taxes had not been paid by January 30, as required by the lease. However, the eviction notice of January 24 had mentioned neither default and both had been cured before Boyle's eviction proceeding of March 1.

A termination of the lease by reason of such a default required affirmative action on Boyle's part while the defaults were in effect. When a tenant defaults in the payment of rent under a lease, giving the landlord a right to declare a forfeiture for this reason, if, before a forfeiture is declared by the landlord, the rent due is paid, the right to take advantage of the default as a forfeiture has passed: *McKean Natural Gas Co. v. Wolcott*, 254 Pa. 323, 326–7, 98 A. 955 (1916). We conclude that the eviction proceeding was properly dismissed.

Order affirmed.