## Philo v. Rought

304

*Joseph Mieszkowski,* for defendant.

*R. Lawrence Coughlin* and *H. Monroe Houtz,* for plaintiff.

PINOLA, J., May 13, 1954.—Plaintiff, who is the widow of William L. Philo, brought a bill in equity against defendant asking that she be declared a trustee of certain real estate acquired by her but paid for with the funds of plaintiff's husband; in short, that she be declared a resulting trustee.

At the conclusion of plaintiff's case, counsel for defendant moved for a nonsuit.

Since a nonsuit should only be entered in a clear case where plaintiff cannot recover under any view of the evidence with every doubt resolved against its entry and all inferences drawn most favorably to plaintiff, Shechter v. Shechter et al., 366 Pa. 30, we will give the reasons for granting the motion.

In 1941, William J. Jones of Tunkhannock, the owner of 1.42 acres of land and house thereon in

Jackson Township, advertised it for sale. He received a letter from William L. Philo. Getting in touch with him, Jones and his wife arranged to sell the property to William L. Philo and Sarah E. Rought for $1,600, payable in monthly installments of $20, together with interest at the rate of 6 per cent.

The agreement was drawn by attorney James Fields of Tunkhannock, signed on November 1, 1941, and the first payment made December 12th.

The Joneses lived at Eatonville Township, Wyoming County. Most of the payments, beginning with that made on December 12, 1941, to January, 1943, were made by postal money order. A few of them showed William Philo as the sender. Other payments were made in cash, given by Mrs. Rought in the presence of Mr. Philo, to the Joneses at their home. Still other payments were made by means of checks signed by Sarah E. Rought, drawn on the First National Bank of Kingston, where William L. Philo and she had opened a joint account with right of survivorship, on March 9, 1945.

The list of deposits from that date to December 10, 1949, was offered in evidence, but there is no testimony to show who made made the deposits, except in three instances. On May 10, 1945, a check drawn on Scranton was cashed, presumably the pay check of William L. Philo from the Lackawanna Railroad, and $40 deposited in the joint account. On June 12, 1945, another check drawn on Scranton was cashed and $20 deposited in the account. A third one drawn on Scranton was cashed on August 10, 1945, and $20 deposited in the account.

The most that can be said about the joint account is that cash totaling $80 from three of William Philo's checks went into the joint account. Nowhere does it appear where the rest of the money came from and

it well may be that the checks drawn by Sarah E. Rought on the joint account represented her own contributions to the account.

The account book of the Joneses shows payments by check beginning March 9, 1945, and including October, 1946, another check paid in February, 1947, and finally five checks paid in December, 1948, January, February, March and April, 1949.

After three or four years and at a time when approximately $800 of the purchase price had been paid, William L. Philo and Sarah E. Rought together asked that the existing contract be cancelled and a new one be substituted in which Sarah E. Rought alone was to be the purchaser. This was agreeable to the Joneses and the new contract was prepared by counsel for defendant. Both Philo and Mrs. Rought frankly stated to the vendors that the change was desired in order to prevent the wife of Mr. Philo from having any interest in the property.

While the payment of a part of the purchase money of property raises a resulting trust to the extent of that payment in favor of the party by whom made, Chadwick v. Felt, 35 Pa. 305, the testimony as to what Philo contributed is not clear, precise and convincing as required: Hale v. Sterling, 369 Pa. 336. The most that we can glean from it is that on a few occasions postal money orders for installment payments indicated the sender to be William Philo, and that on three occasions he deposited a total of $80 in the joint account, from which Sarah E. Rought drew checks for payments on the contract.

Moreover, whatever payments he made were made when the agreement was with him and defendant as purchasers. And whatever interest he had, he either abandoned or transferred to defendant when he asked for cancellation of the contract. If a presumption of

trust had arisen at any time, it has definitely been rebutted: Orth v. Wood, 354 Pa. 121.

Plaintiff called her daughter, Mildred Wunch, as a witness.

Where an heir at law seeks to set aside a gift or grant of real estate, if the transfer is prima facie valid, the transferee is the party on the record representing the interest of the deceased transferor, and the heir of the latter is the party with the adverse interest who is incompetent to testify: Campbell v. Brown, 183 Pa. 112; Chambley et al. v. Rumbaugh et al., 333 Pa. 319.

Counsel for plaintiff recognized the incompetency of Mrs. Wunch and presented an assignment of her interest to her mother, Lillian Philo, dated January 8, 1954, a long time after this action was commenced.

Whether she was thereby rendered competent depends upon compliance with the Act of May 23, 1887, P. L. 158, sec. 6, 28 PS §324, which reads as follows:

"Any person, who is incompetent under clause (e) of section five by reason of interest, may nevertheless be called to testify against his interest, and in that event he shall become a fully competent witness for either party; and such person shall also become fully competent for either party by a release or extinguishment in good faith of his interest, upon which good faith the trial judge shall decide as a preliminary question."

It is to be noted that through the paper the daughter did not release her interest in the estate; she simply assigned her interest to her mother. This she did, as she said, because the mother needed the property more than she needed it. We did not then and we do not now believe the assignment to have been in good faith. We choose to believe that it was made deliberately in an attempt to make her competent to testify follow-

ing the death of her father: Dellacasse et al., v. Floyd et al., 332 Pa. 218, 220. In order to qualify a witness, it should appear that the assignment of her interest was made in the usual course of events and prior to the inception of the litigation and not merely for the purpose of qualifying herself prior to or during trial: Catalano's Estate, 309 Pa. 249, 250; Swaney's Estate, 94 Pa. Superior Ct. 216.

Plaintiff offered in evidence the transcript of testimony given by William L. Philo in nonsupport proceedings containing declarations by him as to the ownership of the property in which he lived. We sustained an objection thereto and we believe that we did so properly.

Under section 9 of the Act of May 23, 1887, P. L. 158, 28 PS §327, if a witness who has given testimony in any civil proceedings should afterwards die, the notes of testimony of such witness may be offered in civil issue which may be afterwards formed between the same parties and involving the same subject-matter as that upon which such witness was examined if, and only if, the party against whom the notes of testimony are offered, had actual or constructive notice of the examination and an opportunity to be present and examine or cross-examine the witness.

In the first place, the nonsupport proceedings are not civil proceedings. Then, too, defendant here was not a party to them nor did she have any right to be present and examine or cross-examine William L. Philo. Furthermore, the present proceedings do not involve the same subject-matter nor are they between the same parties, although for some purposes she does stand in his shoes.

In Leona Ronders v. Glen Alden Coal Company, 88 D. & C. 425, a compensation case, we rejected the notes of testimony given by the husband of claimant in an action of divorce brought by him against her.

In that case she claimed that she had no notice of the hearing, although her counsel had received notice.

The same restrictions existed with reference to depositions under the Act of March 28, 1814, P. L. 248, 28 PS §1, and exist now under Pa. R. C. P. 4020. See 5 Anderson Pa. Civ. Pract. 732, 765.

### Order

A careful consideration of the testimony reveals that plaintiff has failed to sustain her burden and we, therefore, enter the following

### Order

Now, May 13, 1954, the motion of defendant for nonsuit is granted.